UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. _____

Valerie Greenfeld, an individual,

      Plaintiff,

v.

Squidvision Corp., a Delaware corporation,
Kannahaus Corp., a Delaware corporation,
Ecoflame Solutions Corp., a Delaware corporation,
Scentcast LLC, a Delaware company,
Bobby Orbach, an individual,
Amir Preisler, an individual,
Hezi Basok, an individual, and
Noga Solovey, an individual,

      Defendants.

_____/

## **COMPLAINT**

     Plaintiff Valerie Greenfeld ("Ms. Greenfeld"), by and through the undersigned counsel,

brings this action against Defendants Squidvision Corp. ("Squidvision"), Kannahaus Corp.

("Kannahaus"), Ecoflame Solutions Corp. ("Ecoflame"), Scentcast LLC ("Scentcast"), Bobby

Orbach ("Orbach"), Amir Preisler ("Preisler"), Hezi Basok ("Basok"), and Noga Solovey

("Solovey") (collectively "Defendants"), and states:

## **NATURE OF THE ACTION**

     1.    This action arises out of a series of fraudulent schemes orchestrated by Defendant,

Amir Preisler, and his various cohorts, to illegally sell unregistered securities and solicit

investment in sham companies, under the guise of developing cutting-edge technologies and

promoting social good.

2.      Specifically, Defendants, without an applicable exemption, promoted unregistered securities offerings in Squidvision Corp., Kannahaus Corp., and Ecoflame Solutions Corp., flouting U.S. Securities and Exchange Commission (the "SEC") and the Florida Department of Financial Services regulations in the process.

3.      As a result, prior to making their investment decisions, investors were denied access to important information that the applicable securities laws and the SEC have long deemed essential to investor protections.

4.      Moreover, not only did Defendants fail to provide investors with a full and fair disclosure of all material information in relation to the purported issuances, but in the course of pitching their sham investment to unsuspecting victims, Defendants also actively misrepresented facts regarding the companies.

5.      Plaintiff, Ms. Greenfeld, is one such victim.  As a result of Defendants' fraudulent scheme, Ms. Greenfeld was duped into tendering hundreds of thousands of dollars toward sham investments in Squidvision Corp., Kannahaus Corp., and Ecoflame Solutions Corp.

6.      Ms. Greenfeld now brings this action to recover the monies tendered in connection with the Defendants' fraudulent scheme.

**THE PARTIES**

7.      Plaintiff, Ms. Greenfeld, is a citizen of the United States and is domiciled in the State of Maryland.

8.      Upon information and belief, Defendant Squidvision is a corporation formed under the laws of the State of Delaware.  It maintains a place of business at 401 E Las Olas Blvd., 130-593 Fort Lauderdale, FL 33301, and conducts business at this location.

9.      Upon information and belief, Defendant Kannahaus is a corporation formed under the laws of the State of Delaware.  It maintains a place of business at 401 E Las Olas Blvd., 130-593 Fort Lauderdale, FL 33301, and conducts business at this location.

10.      Upon information and belief, Defendant Ecoflame is a corporation formed under the laws of the State of Delaware.  It maintains a place of business at 401 E Las Olas Blvd., 130-593 Fort Lauderdale, FL 33301, and conducts business at this location.

11.      Upon information and belief, Defendant Scentcast is a limited liability company formed under the laws of the State of Delaware.  It maintains a place of business at 401 E Las Olas Blvd., 130-593 Fort Lauderdale, FL 33301, and conducts business at this location.

12.      Upon information and belief, Defendant Orbach is a citizen of the United States and is domiciled in the State of New York.  At all relevant times, Orbach acted as a promoter and an agent for Squidvision in selling unregistered securities to Ms. Greenfeld and soliciting investment on behalf of Squidvision.

13.      Upon information and belief, Defendant Preisler is a citizen of the United States and is domiciled in the State of Florida.  At all relevant times, Preisler acts as a promoter, director, and/or officer of Squidvision, Kannahaus, and Ecoflame.

14.      Upon information and belief, Defendant Basok is a citizen of Israel and is domiciled in Israel.  At all relevant times, Basok acts as a promoter, director, and/or officer of Squidvision, Kannahaus, and Ecoflame.

15.      Upon information and belief, Defendant Solovey is a citizen of the United States and is domiciled in the State of Florida.  At all relevant times, Solovey acts as a promoter, director, and/or officer of Squidvision and Kannahaus.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction pursuant to Section 22 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77v, given Ms. Greenfeld's claims under Sections 5, 12(a)(1), and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§77e, 77*l*(a)(1), 77o.

17.     This Court has subject matter jurisdiction pursuant to Section 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78aa(a), which provides that federal courts have exclusive jurisdiction over violations of the Exchange Act.

18.     This Court has subject matter jurisdiction over Ms. Greenfeld's other claims under the laws of the State of Florida pursuant to this Court's supplemental jurisdiction under 28 U.S.C. §1367(a), because they are substantially related to claims in the action within this Court's original jurisdiction, such that they form part of the same case or controversy.

19.     This Court has subject matter jurisdiction over Ms. Greenfeld's claims under 28 U.S.C. §1332(a), because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and the citizenship of Ms. Greenfeld is diverse from those of Defendants.

20.     This Court has personal jurisdiction over all Defendants as a result of the continuous and systematic acts committed by them in connection with solicitation and sale of unregistered securities on behalf of Squidvision, Kannahaus, and Ecoflame, each of which maintains a place of business and engages in transactions in Fort Lauderdale, Florida.

21.     Venue is proper pursuant to 15 U.S.C. § 77v(a) because one or more of the Defendants is found or transacts business in this district, and because the solicitation and sale of unregistered securities took place in this district.

## GENERAL ALLEGATIONS

*Orbach's Promotion of Defendant Entities*

22.     Preisler and Orbach had been long-time friends and business associates, well before the 2020 formation of Squidvision, Kannahaus, and Ecoflame.

23.     In or around March of 2016, a mutual friend introduced Orbach to Ms. Greenfeld in New York City.  Orbach held himself out as well-connected in New York business circles, particularly within the Jewish and Israeli communities.  To validate this image to Ms. Greenfeld, Orbach purported to have business and personal relationships with the likes of Sheldon Adelson, Bill Gates, and certain owners of major league sports franchises.

24.     Having been involved heavily in the water-tech innovation space, including certain projects with Israel-based companies, Ms. Greenfeld was intrigued by Orbach's purportedly similar background.  The two briefly discussed business ideas.

25.     After cultivating a relationship with Ms. Greenfeld over several years, Orbach obtained a general sense of Ms. Greenfeld's business interests.

26.     On October 2, 2019, Orbach invited Ms. Greenfeld to meet Preisler to discuss Squidvision—a company purporting to develop security systems to better detect concealed weapons.  Orbach knew that, given Ms. Greenfeld's background in the defense industry, she would likely have interest.

27.     In late October of 2019, in order to induce Ms. Greenfeld's investment in Squidvision, Orbach coordinated a call so that Preisler and his business associate Basok could pitch the company to Ms. Greenfeld.  Josh Altman, whom Ms. Greenfeld had previously known through her involvement in the water-tech industry, was invited to the call by Basok.  This coincidence made Ms. Greenfeld more comfortable with discussing opportunities with Preisler.

28.     During the October 2019 call, Preisler, while touting the purported viability of the Squidvision venture, represented that Squidvision would be a safe and profitable investment. Notwithstanding Preisler's pitch, Ms. Greenfeld declined to invest, at that time.

29.     Having yet to induce Ms. Greenfeld's investment, in early November of 2019, Defendants intensified their efforts, as Orbach suggested that Preisler visit Ms. Greenfeld's residence to discuss Squidvision, in person.

30.     Following Orbach's suggestion, Ms. Greenfeld agreed to meet with Preisler and his then-girlfriend for dinner, where he continued to solicit Ms. Greenfeld's investment in Squidvision.

31.     On November 20, 2019, in a message to Ms. Greenfeld, Orbach stated that "[Preisler was] bringing four Israeli companies to Miami next week, including Squidvision." He encouraged Ms. Greenfeld to fly to South Florida to attend the meeting, during which Preisler would give a presentation on several companies.

32.     In furtherance of his efforts to induce Ms. Greenfeld to attend, Orbach represented that Preisler would reimburse Ms. Greenfeld for all of her travel expenses.

33.     Relying on Orbach's representations, Ms. Greenfeld agreed and paid for the airfare and lodging in the total amount of approximately $1,000, up front, with the expectation of being reimbursed.[1]

---

[1]     Defendants did not ultimately reimburse Ms. Greenfeld for her travel expenses.

*"Investment" in Squidvision and Kannahaus*

34.    At the November 27, 2019 meeting in Fort Lauderdale, Florida, Preisler and Basok introduced themselves as "co-founders" and "co-Chairmen" of Squidvision and Kannahaus[2] and pitched investment opportunities in Preisler's various companies to the attendees, including Noga Solovey, Josh Altman, George Davis, Jason Melachrino, Jennifer Abbott, Mark Brody, and Ms. Greenfeld.

35.    Critically, neither the Squidvision nor Kannahaus offerings were registered with the SEC or the Florida Department of Financial Services.  Additionally, Defendants, each of whom promoted investments to Ms. Greenfeld in Squidvision and Kannahaus, never provided Ms. Greenfeld with adequate disclosure of all material information in relation to the companies, as required by applicable federal and state securities law.

36.    Specifically, Ms. Greenfeld and other attendees were not provided with the very basic disclosures that applicable securities laws and the SEC have long deemed essential to investor protections, including use of "plain English" to describe the offering; a description of key information and incentives concerning management; warnings about relying on forward-looking statements; an explanation of how the proceeds from the offering would be used; and a standardized format that investors could readily follow.

37.    Without these critical disclosures mandated by federal and state securities laws, investors, including Ms. Greenfeld, were not informed of the significant risks inherent in these investments, particularly those associated with purported start-ups like Squidvision and Kannahaus.  Indeed, even to date, neither Squidvision nor Kannahaus have provided the required disclosures to Ms. Greenfeld.

---

[2]    Neither Squidvision nor Kannahaus had been formed at that time.

38.    Instead, during the November 27, 2019 meeting, Preisler and Basok merely gave a brief description of each company, its management, and business plan, in extremely general terms.

39.    In doing so, Preisler and Basok made the following false representations to induce Ms. Greenfeld's investment in Squidvision and Kannahaus:

a.    Preisler and Basok represented to Ms. Greenfeld that Brody had strong ties with the U.S. government defense industry, including the United States Central Command, and had already been enlisted to promote Squidvision to the U.S. government; [3]

b.    Preisler and Basok represented that Squidvision had already received a bid from, and would be working together with, General Dynamics – a global aerospace and defense company in which Brody was allegedly involved – to develop the alleged security system;

c.    Preisler and Basok represented that they had already purchased and owned 11,000 acres of land overseas for cultivation of Kannahaus' cannabis;

d.    Preisler and Basok represented that the valuation of Squidvision was in excess of $5 million;

e.    Preisler and Basok represented that the valuation of Kannahaus was in excess of $5 million; and

f.    Preisler and Basok represented that investment in Squidvision and Kannahaus would be safe and secure, in light of the purported valuation and the viability of the project underlying each company.

40.    On information and belief, at the time these representations were made, Defendants knew that these representations were false.  As to Squidvision, Brody never agreed or otherwise promised to promote Squidvision to the U.S. government.  Squidvision never received a bid from,

---

[3]    Preisler and Basok made this representation outside of Brody's presence.

or worked with, General Dynamics.  With respect to Kannahaus, Preisler and Basok did not acquire the 11,000 acres on behalf of the company, as represented.

41.     Additionally, at the pertinent time, neither Squidvision nor Kannahaus had the assets, operations, or infrastructure to justify a valuation of $5 million.  Defendants did not provide the attendees with any documented financials, contracts, sales projections, anticipated return on investment, schedule of assets justifying the $5 million valuation, or any other the basis for the purported valuation.

42.     Tellingly, during the entire November 27, 2019 meeting, no written material, whatsoever, was offered to attendees for review or reference.

43.     Worse yet, and unbeknownst to Ms. Greenfeld, Squidvision and Kannahaus were non-existent at that time.  Indeed, Squidvision and Kannahaus did not come into existence until January 1 and January 6, 2020, respectively—well after the false representations regarding the companies at the November 27 meeting.

44.     In reliance on the representations made by Preisler and Basok on behalf of Squidvision and Kannahaus, Ms. Greenfeld orally agreed to tender $75,000 to invest in Squidvision, which according to Preisler and Basok would represent a 1.5% interest in Squidvision.  Ms. Greenfeld also agreed to tender $25,000 to invest in Kannahaus, which according to Preisler and Basok would represent a 0.5% interest in Kannahaus.  Preisler and Basok represented to Ms. Greenfeld that they would provide Ms. Greenfeld with a shareholder agreement detailing her ownership interest in Squidvision, as well as Kannahaus.

45.     Upon information and belief, other attendees of the November 27 meeting, including but not limited to Solovey, Josh Altman, Jason Melachrino, Jennifer Abbott, and Brody also invested in Squidvision, Kannahaus, or both.

46.     Days later, in or around early December of 2019, Preisler called Ms. Greenfeld to follow up regarding her investment.  Preisler reiterated the representations regarding the alleged bid from General Dynamics, Brody's purported involvement, and the unjustified valuation of each company.

47.     Preisler then requested that Ms. Greenfeld make an initial payment of 10% of her total investment, in the amount of $7,500.  A short time after the call, Solovey drafted a Stock Purchase Agreement, memorializing Ms. Greenfeld's investment in Squidvision (the "Squidvision SPA"), and sent it to Ms. Greenfeld via WhatsApp.

48.     Ms. Greenfeld executed the Squidvision SPA and sent her executed copy to Solovey via WhatsApp.  Preisler, in his capacity as the President of Squidvision, then signed the Squidvision SPA and sent his executed copy, via WhatsApp, to Ms. Greenfeld.  A copy of the Squidvision SPA is attached hereto as Exhibit A.

49.     To further demonstrate Preisler's fraudulent scheme, on December 6, 2019, Preisler and Solovey instructed Ms. Greenfeld to wire her payment to an account titled to "Scentcast LLC." According to the information in the instruction, Defendant, Scentcast, shares the same physical address as that of Squidvision and Kannahaus.

50.     To confirm that her investment was indeed credited to Squidvision, Ms. Greenfeld wrote to Preisler and Solovey: "I am not planning to invest in Scentcast.  Do you have a separate account for Squidvision?"

51.     Immediately after Ms. Greenfeld's inquiry, Preisler called her and stated that the instruction was correct and that Ms. Greenfeld should wire her investment in Squidvision to the Scentcast account because "it does not matter either way."

52.     Following Preisler's confirmation and assurance, Ms. Greenfeld made the initial payment of $7,500.00 to Scentcast.  The transfer was completed on December 9, 2019.

53.     In or around the middle of December of 2019, in order to induce Ms. Greenfeld to tender the balance of her funds for investment, Preisler and Solovey paid another visit to Ms. Greenfeld, in Maryland.  At the end of the meeting, and ostensibly in order to bolster Ms. Greenfeld's confidence in furtherance of Defendants' fraudulent scheme, Preisler and Solovey invited Ms. Greenfeld to celebrate with them in New York City for New Year's Eve of 2020.

54.     It worked.  Due in large part to the confidence garnered by Defendants, as well as Preisler, Basok, and Solovey's persistent reiteration of their prior misrepresentations over the holiday, Ms. Greenfeld finally succumbed.

55.     However, in or around early January of 2020, instead of instructing Ms. Greenfeld to wire the remaining balance of $67,500 to Squidvision and her investment of $25,000 to Kannahaus, separately, Preisler instructed Ms. Greenfeld to wire the entire sum of $92,500 to a bank account titled to Squidvision.  After deducting the transaction cost, the amount of $92,480 was transmitted to Squidvision on January 10, 2020.

56.     On March 4, 2021, Solovey sent Ms. Greenfeld a draft Stock Purchase Agreement via WhatsApp, purportedly evidencing Ms. Greenfeld's investment in Kannahaus (the "Kannahaus SPA").  Ms. Greenfeld executed the Kannahaus SPA and sent her signed copy to Solovey via WhatsApp.  Preisler then executed the Kannahaus SPA.  A copy of the Kanahaus SPA is attached hereto as Exhibit B.

57.     Both the Squidvision SPA and the Kannahaus SPA contain the following provision: "This agreement is valid subject to signing a shareholder agreement."  *Id.*

11

58.     Over the next few months, neither Squidvision nor Kannahaus provided Ms. Greenfeld with any shareholder agreement to sign.

59.     Moreover, while Delaware law requires a newly-formed corporation to conduct an initial shareholder meeting after its formation to elect directors, appoint officers, and enact and adopt the bylaws, as of the filing of this lawsuit, no shareholder meeting was ever held by either company.  This is in direct violation of section 211 of the Delaware Corporate Statutes which requires every corporation to hold an annual shareholders meeting at least once every 13 months.[4]

60.     Given the COVID-19 pandemic, Ms. Greenfeld was not terribly alarmed, initially.

61.     However, after more than a year of repeated unfulfilled requests for formal documents and information on Squidvision and Kannahaus, Ms. Greenfeld grew impatient.

62.     Having been left in the dark by Preisler and his cohorts regarding her investment in Squidvision and Kannahaus, Ms. Greenfeld decided to reach out to Orbach for information on the status of the companies.

63.      Rather than address Ms. Greenfeld's concerns directly, Orbach continued to promote the sham companies to Ms. Greenfeld, in furtherance of Defendants' fraudulent scheme.

64.     Specifically, Orbach would periodically share biographies of purported subject matter experts who were supposedly already affiliated with Squidvision or Kannahaus.  In order to solidify Ms. Greenfeld's confidence in the companies, Orbach boasted that the subject matter specialists were his "friends" who would be enlisted to ensure the success of Squidvision and Kannahaus.

---

[4]     Under the internal affair doctrine, the affairs of Squidvision and Kannahaus are governed by Delaware law.

65.     Upon information and belief, Orbach knew that this representation was untrue at the time the representation was made.

66.     By February of 2021, Ms. Greenfeld grew increasingly concerned over the dearth of information regarding the status of her investments and the operations of the companies she had invested in.

67.     As a result, Ms. Greenfeld began contacting Defendants regarding rescission of the Squidvision SPA and the Kannahaus SPA.  As of the filing of this lawsuit, Ms. Greenfeld has yet to receive a response from any Defendant.

68.     Upon information and belief, Defendants sold both Squidvision and Kannahaus securities to five or more people in the State of Florida.  As of filing this lawsuit, Ms. Greenfeld has yet to be informed by either company of her right to rescind the illegal sale of the Squidvision and Kannahaus securities.

*"Investment" in Ecoflame*

69.     In or around September of 2020, Preisler approached Ms. Greenfeld with his "best project" – an alleged clean energy solution which, according to the representations made by Preisler to Ms. Greenfeld, transfers almost any type of waste into clean energy.  Specifically, Preisler represented to Ms. Greenfeld that he and Basok had recently acquired a company called "Ecoflame" and that they were working with other investors on a cutting-edge endeavor to combine Ecoflame, an energy company, with Tethys Solar Desalination—a water technology company.  Preisler represented to Ms. Greenfeld that the company resulting from the merger would be worth approximately $8 billion.

70.     To entice Ms. Greenfeld's investment in Ecoflame, Preisler and Basok continued to tout the company's prospects in the following months.

71.     On November 24, 2020, Basok emailed a 15-page PowerPoint presentation of Ecoflame to Ms. Greenfeld.  A copy of the PowerPoint presentation is attached as Exhibit C.  The presentation briefly discussed the alleged technology underlying Ecoflame and how the supposed new technology would work.

72.     Yet again, Preisler and Basok failed to provide Ms. Greenfeld with any of the items required under state and federal law when promoting securities.   To wit, a "plain English" description of the offering; a description of key information and incentives concerning management; warnings about relying on forward-looking statements; an explanation of how the proceeds from the offering would be used; and a standardized format that investors could readily follow.

73.     Moreover, Preisler and Basok failed to provide information regarding Ecoflame's financial status, contracts it sought to enter, sales projections, return on investment, or financials which would support the alleged $8 billion valuation.

74.     On or about December 3, 2020, in furtherance of their efforts to induce Ms.Greenfeld's investment, Basok and Preisler provided Ms. Greenfeld with a fraudulent spreadsheet: (i) purporting to show the ownership interest of Basok and Amiad Lapidot[5] in Ecoflame, as of 2018; and (ii) the ownership interest of Basok, Lapidot, and Preisler in Ecoflame, as of 2019.  A copy of the correspondence is attached as Exhibit D.  This, despite the fact that, according to the company's public filings with the Delaware Department of State Division of Corporations, Ecoflame was not formed until November 30, 2020.

---

[5]     Upon information and belief, Lapidot is an agent or officer of Ecoflame.  His name and contact info was listed in the PowerPoint presentation sent by Basok to Ms. Greenfeld on November 24, 2020.

75.     Relying on the above misrepresentations made by Preisler and Basok in relation to Ecoflame, Ms. Greenfeld agreed to tender $200,000 to invest in Ecoflame, which according to Preisler and Basok would represent a 9% interest in Ecoflame.  Similar to the Squidvision transaction, Preisler and Basok asked Ms. Greenfeld to make a 10% initial payment, in the amount of $20,000.  Ms. Greenfeld agreed.

76.     However, this time, Preisler and Basok again instructed Ms. Greenfeld to wire the payment, as partial consideration for an alleged 9% interest in Ecoflame, to Scentcast.  On December 11, 2020, Ms. Greenfeld tendered $20,000 to Scentcast.

77.     Notably, Squidvision, Kannahaus, Ecoflame, and Scentcast share the same office space.

78.     Upon information and belief, Preisler and Basok sold Ecoflame securities to five or more people in the State of Florida.  As of filing this lawsuit, Ms. Greenfeld has yet to be informed by Ecoflame regarding her right to rescind the illegal sale of the Ecoflame securities.

79.     Just as with Squidvision and Kannahaus, no shareholder meeting was held by Ecoflame to administer its business, such as electing directors and officers and enacting and approving the bylaws.  To date, Ms. Greenfeld has not received any corporate governance documents in relation to Ecoflame.

80.     In or around January of 2021, Defendants' conduct in relation to Ms. Greenfeld's Ecoflame investment took a more pernicious turn: Defendants decided to dispense with the machinations of a long-term confidence scheme, opting instead for outright theft, by denying that Ms. Greenfeld ever even owned an interest in Ecoflame.

81.     More specifically, on February 9, 2021, Basok acknowledged Ecoflame's receipt of Ms. Greenfeld's $20,000.00; however, Basok asserted that Ecoflame could not consider Ms.

Greenfeld as an owner because Ms. Greenfeld did not invest the amount she agreed to, originally. This position is contrary to Section 156 of the Delaware Corporate Statutes, which allows a Delaware corporation to "issue the whole or any part of its shares as partly paid."

82.     To date, Ecoflame has refused to refund Ms. Greenfeld's $20,000.00 investment.

83.      All conditions precedent to maintaining this action have been satisfied or waived.

84.     Ms. Greenfeld has been forced to engage the services of counsel and to pay legal fees for counsel's services.

**FIRST CAUSE OF ACTION**
**Unregistered Offer and Sale of Securities**
**Violations of Sections 5 and 12(a)(1) of the Securities Act**
**(Squidvision)**

85.     Ms. Greenfeld re-alleges paragraphs 1 through 68, 83 and 84 and incorporates them by reference as if fully set forth herein.

86.     Section 5(a) of the Securities Act states: "Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e(a).

87.     Section 5(c) of the Securities Act states: "It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior

to the effective date of the registration statement) any public proceeding or examination under section 77h of this title." 15 U.S.C. § 77e(c).

88.     When issued, the Squidvision stock was a security within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1).  Squidvision, through its promoters, directors, officers, and agents including Orbach, Preisler, Basok, and Solovey, promoted, solicited or sold the company's unregistered securities and directly or indirectly made use of means or instruments of transportation, including flying to Ms. Greenfeld's residence to solicit investment, communication in interstate commerce via Whatsapp to offer to sell or to sell securities, and carrying, or causing such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

89.     Squidvision did not file any registration statements with the SEC, nor have any registration statements been in effect with respect to any of the offerings alleged herein.

90.     Section 12(a)(1) of the Securities Act provides in relevant part: "Any person who offers or sells a security in violation of section 77e of this title [. . .] shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."  15 U.S.C. § 77*l*(a)(1).

91.     Accordingly, Squidvision has violated Sections 5(a), 5(c), and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), and 77*l*(a)(1).

92.     Ms. Greenfeld seeks rescissory damages with respect to her purchase of Squidvision stock.

## SECOND CAUSE OF ACTION
### Controlled Person Liability for Violations of
### Sections 5, 12(a)(1), and 15 of the Securities Act
### (Preisler, Basok, Solovey, and Orbach in relation to Squidvision Securities)

93.     Ms. Greenfeld re-alleges paragraphs 1 through 68, 83 and 84 and incorporates them by reference as if fully set forth herein.

94.     This Count is asserted against Preisler, Basok, Solovey, and Orbach for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, which provides: "Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable."

95.     Each of these individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts at the time of the wrongs alleged herein, had the power and authority to direct the management and activities of Squidvision and to cause it to engage in the unlawful solicitation and sale of Squidvision securities.

96.     Specifically, Preisler and Basok, as Squidvision's Co-Chairmen, and Solovey as an agent and drafter of the Squidvision SPA, have the power to direct and operate or cause the direction and operations of the management and policies of Squidvision.  Indeed, Preisler, Basok, and Solovey personally participated in the solicitation and sale of unregistered Squidvision securities on behalf of Squidvision to Ms. Greenfeld.

97.     Orbach as Squidvision's promoter and agent, had the power and authority to directly solicit purchases of securities from investors like Ms. Greenfeld.  Orbach personally

participated or aided in making the sale of unregistered securities on behalf of Squidvision, to Ms. Greenfeld.

98.     Preisler, Basok, Solovey, and Orbach are jointly and severally liable with Squidvision in connection with the illegal solicitation and sale of the unregistered securities to Ms. Greenfeld and, as a result, are liable to Ms. Greenfeld for rescission.

**THIRD CAUSE OF ACTION**
**Unregistered Offer and Sale of Securities**
**Violations of Sections 517.07, 517.12, and 517.211 of the Florida Statutes**
**(Squidvision, Preisler, Basok, Solovey, and Orbach)**

99.     Ms. Greenfeld re-alleges paragraphs 1 through 68, 83 and 84 and incorporates them by reference as if fully set forth herein.

100.    Section 517.12(1) of the Florida Statutes states: "No dealer, associated person, or issuer of securities shall sell or offer for sale any securities in or from offices in this state, or sell securities to persons in this state from offices outside this state, by mail or otherwise, unless the person has been registered with the office pursuant to the provisions of this section."

101.    Section 517.07(1) of the Florida Statutes states: "It is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security is exempt under s. 517.051, is sold in a transaction exempt under s. 517.061, is a federal covered security, or is registered pursuant to this chapter."

102.    Squidvision, at the time of selling or offering to sell its own securities to Ms. Greenfeld, did not register with the requisite office, thereby violating Section 517.12(1).

103.    When issued, the stock of Squidvision was a security within the meaning of Section 517.021(22) of the Florida Statutes.  Squidvision, through its promoters, directors, officers, and agents including Orbach, Preisler, Basok, and Solovey promoted, solicited or sold the company's unregistered securities within the State of Florida.

104.    No registration statement in connection with Squidvision stock was filed by Squidvision, or on its behalf, with the Florida Department of Financial Services.

105.    None of the exceptions enumerated in Section 517.07(1) apply to the solicitation and sale of Squidvision securities to Ms. Greenfeld.

106.    Section 517.211 of the Florida Statutes states: "Every sale made in violation of either s. 517.07 or s. 517.12(1). . . may be rescinded at the election of the purchaser."  In addition, each person making the sale and every director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission.

107.    Accordingly, Squidvision has violated Section 517.07(1) of the Florida Statutes by offering and selling its unregistered securities to Ms. Greenfeld.

108.    Preisler, Basok, Solovey, and Orbach, as directors, officers, partners, or agents of Squidvision, are jointly and severally liable to Ms. Greenfeld in connection with Squidvision's solicitation and sale of its unregistered securities to Ms. Greenfeld.

109.    Specifically, Preisler and Basok as Squidvision's Co-Chairmen, and Solovey as an agent and drafter of the Squidvision SPA, have the power to direct and operate or cause the direction and operations of the management and policies of Squidvision.  Indeed, Preisler, Basok, and Solovey personally participated in the solicitation and sale of unregistered securities on behalf of Squidvision to Ms. Greenfeld.

110.    Orbach, as Squidvision's promoter and agent, had the power and authority to directly solicit purchases of Squidvision securities from investors like Ms. Greenfeld.  Orbach personally participated or aided in making the sale of unregistered securities on behalf of Squidvision to Ms. Greenfeld.

111.    Ms. Greenfeld seeks rescissory damages with respect to her purchase of Squidvision stock.

**FOURTH CAUSE OF ACTION**
**Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5**
**(Squidvision, Preisler, and Basok)**

112.    Ms. Greenfeld re-alleges paragraphs 1 through 68, 83 and 84 and incorporates them by reference as if fully set forth herein.

113.    Under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, it is unlawful: (a)  to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

114.    Defendants Preisler and Basok engaged regularly in the sale of unregistered securities, including the sale of Squidvision's securities to Ms. Greenfeld.

115.    Defendant Squidvision, through its officers Preisler and Basok, individually or in concert, by using means or instruments of transportation or communication in interstate commerce, made various false statements of material fact or omitted material facts necessary to make their statements not misleading in connection with solicitations and sales of Squidvision's securities to Ms. Greenfeld.

116.    Namely, on November 27, 2019, Preisler and Basok, singly or in concert, on behalf of Squidvision, made the following false statements in connection with the solicitation and sale of Squidvision securities to Ms. Greenfeld:

      a.   Preisler and Basok represented to Ms. Greenfeld that Brody had strong ties with the U.S. government defense industry, including the United States Central Command, and had already been enlisted to promote Squidvision to the U.S. government;

      b.   Preisler and Basok represented that Squidvision had already received a bid from, and would be working together with, General Dynamics – a global aerospace and defense company in which Brody was allegedly involved – to develop the alleged security system;

      c.   Preisler and Basok represented that the valuation of Squidvision was in excess of $5 million; and

      d.   Preisler and Basok represented that investment in Squidvision would be safe and secure, in light of the purported valuation and the viability of the project underlying the company.

117.   Preisler further reaffirmed the above misrepresentations during his call with Ms. Greenfeld in early December 2019.

118.   At the time these representations were made, Defendants Squidvision, Preisler and Basok knew that these representations were false.  Specifically, Brody never agreed or otherwise promised to promote Squidvision to the U.S. government.  Squidvision never received a bid from General Dynamics.  Most significantly, Squidvision had no assets, operations, or infrastructure to develop the alleged security system, or to justify a valuation of $5 million.

119.   In direct and justifiable reliance upon these misrepresentations and omissions of material fact by Preisler and Basok on behalf of Squidvision, Ms. Greenfeld tendered $75,000.00 for the purchase of a purported 1.5% interest in Squidvision.

120.   As a direct and proximate result of Defendants' fraudulent misrepresentations in violation of Section 10(b) of the Exchange Act and Rule 10b-5, Ms. Greenfeld has suffered substantial damages.

## FIFTH CAUSE OF ACTION
### Violation of Section 517.301 of the Florida Statutes
### (Squidvision, Preisler, and Basok)

121.    Ms. Greenfeld re-alleges paragraphs 1 through 68, 83 and 84 and incorporates them by reference as if fully set forth herein.

122.    Section 517.301(1)(a) of the Florida Statutes provides:  "It is unlawful and a violation of the provisions of this chapter for a person in connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security, including any security exempted under the provisions of s. 517.051 and including any security sold in a transaction exempted under the provisions of s. 517.061, directly or indirectly [2] to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or [3] to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person."

123.    Defendants Preisler and Basok engaged regularly in sales of unregistered securities, including the sale of Squidvision's securities to Ms. Greenfeld.

124.    Defendant Squidvision, through its officers Preisler and Basok, individually or in concert, by using means or instruments of transportation or communication in interstate commerce, made various false statements of material fact, or omitted material facts necessary to make their statements not misleading in connection with solicitation and sale of Squidvision's securities to Ms. Greenfeld.

125.    Namely, on November 27, 2019, Preisler and Basok, singly or in concert, on behalf of Squidvision, made the following false statements in connection with the solicitation and sale of Squidvision securities to Ms. Greenfeld:

23

a.      Preisler and Basok represented to Ms. Greenfeld that Brody had strong ties with the U.S. government defense industry, including the United States Central Command, and had already been enlisted to promote Squidvision to the U.S. government;

b.      Preisler and Basok represented that Squidvision had already received a bid from, and would be working together with, General Dynamics – a global aerospace and defense company in which Brody was allegedly involved – to develop the alleged security system;

c.      Preisler and Basok represented that the valuation of Squidvision was in excess of $5 million; and

d.      Preisler and Basok represented that investment in Squidvision would be safe and secure, in light of the purported valuation and the viability of the project underlying the company.

126.    Preisler further reaffirmed the above misrepresentations during his call with Ms. Greenfeld in early December 2019.

127.    At the time these representations were made, Defendants Squidvision, Preisler and Basok knew that these representations were false.  Specifically, Brody never agreed or otherwise promised to promote Squidvision to the U.S. government.  Squidvision never received a bid from General Dynamics.  Most significantly, Squidvision had no assets, operations, or infrastructure to develop the alleged security system or justify a valuation of $5 million.

128.    By making the above misrepresentations, Defendants engaged in transactions and operated Squidvision's business as a fraud or deceit upon Ms. Greenfeld.

129.    In direct and justifiable reliance upon these misrepresentations and omissions of material fact by Preisler and Basok on behalf of Squidvision, Ms. Greenfeld tendered $75,000 for a purported 1.5% interest in Squidvision.

130.    As a direct and proximate result of Defendants' fraudulent misrepresentations in violation of Section 517.301 of the Florida Statutes, Ms. Greenfeld has suffered substantial damages.

### SIXTH CAUSE OF ACTION
**Unregistered Offer and Sale of Securities**
**Violations of Sections 5 and 12(a)(1) of the Securities Act**
**(Kannahaus)**

131.    Ms. Greenfeld re-alleges paragraphs 1 through 68, 83 and 84 and incorporates them by reference as if fully set forth herein.

132.    Section 5(a) of the Securities Act states: "Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e(a).

133.    Section 5(c) of the Securities Act states: "It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title." 15 U.S.C. § 77e(c).

134.    When issued, the Kannahaus stock was a security within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1).  Kannahaus, through its promoters, directors,

officers, and agents including Preisler, Basok, and Solovey,  promoted, solicited or sold the company's unregistered securities and directly or indirectly made use of means or instruments of transportation, including flying to Ms. Greenfeld's residence to solicit investment, communicating in interstate commerce via telephone, WhatsApp, and email to offer to sell or to sell securities, and carrying or causing such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

135.    No registration statements were filed by or on behalf of Kannahaus with the SEC. Neither has any registration statement been in effect with respect to any of the offerings alleged herein.

136.    Section 12(a)(1) of the Securities Act provides in relevant part: "Any person who offers or sells a security in violation of section 77e of this title . . . shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."  15 U.S.C. § 77*l*(a)(1).

137.    Accordingly, Kannahaus has violated Sections 5(a), 5(c), and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), and 77*l*(a)(1).

138.    Ms. Greenfeld seeks rescissory damages with respect to her purchase of Kannahaus stock.

## SEVENTH CAUSE OF ACTION
### Controlled Person Liability for Violations of
### Sections 5, 12(a)(1), and 15 of the Securities Act
### (Preisler, Basok, and Solovey in relation to Kannahaus Securities)

139.    Ms. Greenfeld re-alleges paragraphs 1 through 68, 83 and 84 and incorporates them by reference as if fully set forth herein.

140.    This Count is asserted against Preisler, Basok, and Solovey for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, which provides: "Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable."

141.    Each of these individual Defendants, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts, at the time of the wrongs alleged herein, and as set forth herein, had the power and authority to direct the management and activities of Kannahaus and to cause it to engage in the unlawful solicitation and sale of Kannahaus securities.

142.    Specifically, Preisler and Basok as Kannahaus' officers and Solovey as an agent and drafter of the Kannahaus SPA, have the power to direct and operate or cause the direction and operations of the management and policies of Kannahaus.  Indeed, Preisler, Basok, and Solovey personally participated in the solicitation and sale of unregistered Kannahaus securities to Ms. Greenfeld.

143.    Preisler, Basok, and Solovey are jointly and severally liable with Kannahaus in connection with the illegal solicitation and sale of the unregistered securities to Ms. Greenfeld and, as a result, are liable to Ms. Greenfeld for rescission.

## EIGHTH CAUSE OF ACTION
### Unregistered Offer and Sale of Securities
### Violations of Sections 517.07, 517.12, and 517.211 of the Florida Statutes
### (Kannahaus, Preisler, Basok, and Solovey)

144.    Ms. Greenfeld re-alleges paragraphs 1 through 68, 83 and 84 and incorporates them by reference as if fully set forth herein.

145.    Section 517.12(1) of the Florida Statutes states: "No dealer, associated person, or issuer of securities shall sell or offer for sale any securities in or from offices in this state, or sell securities to persons in this state from offices outside this state, by mail or otherwise, unless the person has been registered with the office pursuant to the provisions of this section."

146.    Section 517.07(1) of the Florida Statutes states: "It is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security is exempt under s. 517.051, is sold in a transaction exempt under s. 517.061, is a federal covered security, or is registered pursuant to this chapter."

147.    At all pertinent times, the Kannahaus stock was a security within the meaning of Section 517.021(22) of the Florida Statutes.  Kannahaus, through its promoters, directors, officers, and agents including Preisler, Basok, and Solovey, solicited or sold the company's unregistered securities within the State of Florida.

148.    Kannahaus, at the time of selling or offering to sell its own securities to Ms. Greenfeld, did not register with the requisite office, thereby violating Section 517.12(1).

149.    No registration statement in connection with Kannahaus stock was filed by Kannahaus, or on its behalf, with the Florida Department of Financial Services.

150.    None of the exceptions enumerated in Section 517.07(1) apply to Kannahaus' solicitation and sale of its securities to Ms. Greenfeld.

151.    Under section 517.211, Florida Statutes, every sale made in violation of Section 517.07 may be rescinded at the election of the purchaser.  Each person making the sale and every director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission.  § 517.211, Fla. Stat.

152.    Accordingly, Kannahaus has violated Section 517.07(1) of the Florida Statutes for offering and selling its unregistered securities to Ms. Greenfeld.

153.    Preisler, Basok, and Solovey, as directors, officers, partners, or agents of Kannahaus, are jointly and severally liable to Ms. Greenfeld in connection with Kannahaus' solicitation and sale of its unregistered securities to Ms. Greenfeld.

154.    Specifically, Preisler and Basok as Kannahaus' officers, and Solovey as an agent and drafter of the Kannahaus SPA have the power to direct and operate or cause the direction and operations of the management and policies of Kannahaus.  Indeed, Preisler, Basok, and Solovey personally participated in the solicitation and sale of unregistered Kannahaus securities to Ms. Greenfeld.

155.    Ms. Greenfeld seeks rescissory damages with respect to her purchase of Kannahaus stock.

**NINTH CAUSE OF ACTION**
**Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5**
**(Kannahaus, Preisler, and Basok)**

156.    Ms. Greenfeld re-alleges paragraphs 1 through 68, 83 and 84 and incorporates them by reference as if fully set forth herein.

157.    Under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, it is unlawful (a)  to employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

158.     Defendants Preisler and Basok engaged regularly in sales of unregistered securities, including the sale of Kannahaus' securities to Ms. Greenfeld.

159.     Defendant Kannahaus, through its officers Preisler and Basok, individually or in concert, by using means or instruments of transportation or communication in interstate commerce, made various false statements of material fact, or omitted material facts necessary to make their statements not misleading, in connection with solicitations and sales of Kannahaus' securities to Ms. Greenfeld.

160.     Namely, on November 27, 2019, Preisler and Basok, singly or in concert, on behalf of Kannahaus, made the following false statements in connection with the solicitation and sale of Kannahaus securities to Ms. Greenfeld:

a.     Kannahaus had been formed to develop cannabis technology to cultivate vegetation;

b.     Kannahaus bought 11,000 acres overseas for developing the alleged technology; and

c.     The valuation of Kannahaus was $5 million.

161.     Preisler further reaffirmed the above misrepresentations during his call with Ms. Greenfeld in early December 2019.

162.     At the time these representations were made, Defendants Kannahaus, Preisler, and Basok knew that these representations were false.  Namely, Kannahaus was not in existence in November of 2019, Kannahaus did not acquire land overseas for developing the alleged technology and had no assets, operations, or infrastructure to develop the alleged technology or justify a valuation of $5 million.

163.     In direct and justifiable reliance upon these misrepresentations and omissions of material fact by Preisler and Basok on behalf of Kannahaus, Ms. Greenfeld tendered $25,000 for the purported purchased a 0.5% interest in Kannahaus.

164.     As a direct and proximate result of Defendants' fraudulent misrepresentations in violation of Section 10(b) of the Exchange Act and Rule 10b-5, Ms. Greenfeld has suffered substantial damages.

## TENTH CAUSE OF ACTION
### Violation of Section 517.301 of the Florida Statutes
### (Kannahaus, Preisler, and Basok)

165.     Ms. Greenfeld re-alleges paragraphs 1 through 68, 83 and 84 and incorporates them by reference as if fully set forth herein.

166.     Defendants Preisler and Basok engaged regularly in sales of unregistered securities, including the sale of Kannahaus' securities to Ms. Greenfeld.

167.     Defendant Kannahaus, through its officers Preisler and Basok, individually or in concert, by using means or instruments of transportation or communication in interstate commerce, made various false statements of material fact or omitted material facts necessary to make their statements not misleading in connection with solicitation and sale of Kannahaus' securities to Ms. Greenfeld.

168.    Namely, on November 27, 2019, Preisler and Basok, singly or in concert, on behalf of Kannahaus, made the following false statements in connection with the solicitation and sale of Kannahaus securities to Ms. Greenfeld:

a.    Preisler and Basok represented that they had already purchased and owned 11,000 acres overseas for cultivation of Kannahaus' cannabis;

b.    Preisler and Basok represented that the valuation of Kannahaus was in excess of $5 million; and

c.    Preisler and Basok represented that investment in Kannahaus would be safe and secure, in light of the purported valuation and the viability of the project underlying the company.

169.    Preisler further reaffirmed the above misrepresentations during his call with Ms. Greenfeld in early December 2019.

170.    At the time these representations were made, Defendants Kannahaus, Preisler, and Basok knew that these representations were false.  Kannahaus did not acquire land overseas for developing the alleged technology, and it had no assets, operations, or infrastructure to develop the alleged technology or justify a valuation of $5 million.

171.    By making the above misrepresentations, Defendants engaged in transactions and operated Kannahaus' course of business as a fraud or deceit upon Ms. Greenfeld.

172.    In direct and justifiable reliance upon these misrepresentations and omissions of material fact by Preisler and Basok, on behalf of Kannahaus, Ms. Greenfeld tendered $25,000.00 for purchase of a 0.5% interest in Kannahaus.

173.    As a direct and proximate result of Defendants' fraudulent misrepresentations in violation of Section 517.301 of the Florida Statutes, Ms. Greenfeld has suffered substantial damages.

**ELEVENTH CAUSE OF ACTION**
**Unregistered Offer and Sale of Securities**
**Violations of Sections 5 and 12(a)(1) of the Securities Act**
**(Ecoflame)**

174.    Ms. Greenfeld re-alleges paragraphs 1 through 25, and 69 through 84, and incorporates them by reference as if fully set forth herein.

175.    Section 5(a) of the Securities Act states: "Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e(a).

176.    Section 5(c) of the Securities Act states: "It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under section 77h of this title." 15 U.S.C. § 77e(c).

177.    When issued, the Ecoflame stock was a security within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1).  Ecoflame, through its promoters, directors,

officers, and agents, including Preisler and Basok, promoted, solicited or sold the company's unregistered securities and directly or indirectly made use of means or instruments of transportation, including flying to Ms. Greenfeld's residence to solicit investment, communicating in interstate commerce via email to offer to sell or to sell securities, and carrying or causing such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale.

178.    No registration statements were filed by Ecoflame, or on its behalf with the SEC, and no registration statement was in effect with respect to any of the offerings alleged herein.

179.    Section 12(a)(1) of the Securities Act provides in relevant part: "Any person who offers or sells a security in violation of section 77e of this title . . . shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security."  15 U.S.C. § 77l(a)(1).

180.    Accordingly, Ecoflame has violated Sections 5(a), 5(c), and 12(a)(1) of the Securities Act, 15 U.S.C. §§ 77e(a), 77e(c), and 77l(a)(1).

181.    Ms. Greenfeld seeks rescissory damages with respect to her purchase of Ecoflame stock.

## TWELFTH CAUSE OF ACTION
### Controlled Person Liability for Violations of
### Sections 5 and 12(a)(1) of the Securities Act
### (Preisler and Basok in relation Ecoflame Securities)

182.    Ms. Greenfeld re-alleges paragraphs 1 through 25, and 69 through 84 and incorporates them by reference as if fully set forth herein.

183.    This Count is asserted against Preisler and Basok for violations of Section 15 of the Securities Act, 15 U.S.C. § 77o, which provides: "Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable."

184.    Preisler and Basok, by virtue of their offices, stock ownership, agency, agreements or understandings, and specific acts, at the time of the wrongs alleged herein, and as set forth herein, had the power and authority to direct the management and activities of Ecoflame and to cause it to engage in the unlawful solicitation and sale of Ecoflame securities.

185.    Specifically, Preisler and Basok as Ecoflame's officers have the power to direct and operate or cause the direction and operations of the management and policies of Ecoflame. Indeed, Preisler and Basok personally participated in the solicitation and sale of unregistered Ecoflame securities to Ms. Greenfeld.

186.    Preisler and Basok are jointly and severally liable with Ecoflame in connection with the illegal solicitation and sale of the unregistered Ecoflame securities to Ms. Greenfeld and, as a result, are liable to Ms. Greenfeld for rescission.

### THIRTEENTH CAUSE OF ACTION
**Unregistered Offer and Sale of Securities**
**Violations of Sections 517.07, 517.12, and 517.211 of the Florida Statutes**
**(Ecoflame, Preisler, and Basok)**

187.    Ms. Greenfeld re-alleges paragraphs 1 through 25, and 69 through 84 and incorporates them by reference as if fully set forth herein.

188.    Section 517.12(1) of the Florida Statutes states: "No dealer, associated person, or issuer of securities shall sell or offer for sale any securities in or from offices in this state, or sell securities to persons in this state from offices outside this state, by mail or otherwise, unless the person has been registered with the office pursuant to the provisions of this section."

189.    Section 517.07(1) of the Florida Statutes states: "It is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security is exempt under s. 517.051, is sold in a transaction exempt under s. 517.061, is a federal covered security, or is registered pursuant to this chapter."

190.    At all pertinent times, the stock of Ecoflame was a security within the meaning of Section 517.021(22) of the Florida Statutes.  Ecoflame, through its promoters, directors, officers, and agents, including Preisler and Basok, solicited or sold the company's unregistered securities within the State of Florida.

191.    Ecoflame, at the time of selling or offering to sell its own securities to Ms. Greenfeld, did not register with the requisite office, thereby violating Section 517.12(1).

192.    No registration statement in connection with Ecoflame stock was filed by Ecoflame, or on its behalf, with the Florida Department of Financial Services.

193.    None of the exceptions enumerated in Section 517.07(1) apply to Ecoflame's solicitation and sale of its securities to Ms. Greenfeld.

194.    Under section 517.211, Florida Statutes, every sale made in violation of Section 517.07 may be rescinded at the election of the purchaser.  Each person making the sale and every director, officer, partner, or agent of or for the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission.  § 517.211, Fla. Stat.

195.    Accordingly, Ecoflame has violated Section 517.07(1) of the Florida Statutes for offering and selling its unregistered securities to Ms. Greenfeld.

196.    Preisler and Basok, as directors, officers, partners, or agents of Ecoflame, are jointly and severally liable to Ms. Greenfeld in connection with Ecoflame's solicitation and sale of its unregistered securities to Ms. Greenfeld.

197.    Specifically, Preisler and Basok as Ecoflame's officers, have the power to direct and operate or cause the direction and operations of the management and policies of Ecoflame. Indeed, Preisler and Basok personally participated in the solicitation and sale of unregistered securities on behalf of Ecoflame to Ms. Greenfeld.

198.    Ms. Greenfeld seeks rescissory damages with respect to her purchase of Ecoflame securities.

### FOURTEENTH CAUSE OF ACTION
### Violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5
### (Ecoflame, Preisler, and Basok)

199.    Ms. Greenfeld re-alleges paragraphs 1 through 25, and 69 through 84 and incorporates them by reference as if fully set forth herein.

200.    Under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, it is unlawful (a) to employ any device, scheme, or artifice to defraud, (b) to make any untrue statement of a material fact or to omit to state a material fact

necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

201.    Defendants, Preisler and Basok, engaged regularly in the sale of unregistered securities, including the sale of Ecoflame's securities to Ms. Greenfeld.

202.    Defendant, Ecoflame, through its officers Preisler and Basok, by using means or instruments of transportation or communication in interstate commerce, made various false statements of material fact or omitted material facts necessary to make their statements not misleading in connection with solicitations and sales of Ecoflame's securities to Ms. Greenfeld.

203.    To solicit Ms. Greenfeld's investment in Ecoflame, in September 2020, Preisler represented to Ms. Greenfeld that he and Basok had just acquired Ecoflame and that they were working with other investors on a cutting-edge endeavor to combine Ecoflame, an energy company, with Tethys Solar Desalination—a water technology company.  Preisler represented to Ms. Greenfeld that the company resulting from the merger would be worth approximately $8 billion.

204.    In addition, in December 2020, Basok and Preisler provided Ms. Greenfeld with a fraudulent spreadsheet purporting to show the ownership interest of Basok and Amiad Lapidot in Ecoflame as of 2018, and that of Basok, Lapidot, and Preisler as of 2019.

205.    At the time these representations were made, Defendants Ecoflame, Preisler, and Basok knew that these representations were false.  The representation concerning Preisler's acquisition of Ecoflame as well as the ownership spreadsheet are fraudulent because Ecoflame did

not even exist until November 30, 2020.  More egregiously, Ecoflame had no assets, operations, or infrastructure to develop the alleged clean energy solution or justify the alleged valuation.

206.    In direct and justifiable reliance upon these misrepresentations and omissions of material fact by Preisler and Basok on behalf of Ecoflame, Ms. Greenfeld tendered $20,000 for the purported purchase of Ecoflame's securities.

207.    As a direct and proximate result of Defendants' fraudulent misrepresentations in violation of Section 10(b) of the Exchange Act and Rule 10b-5, Ms. Greenfeld has suffered substantial damages.

## FIFTEENTH CAUSE OF ACTION
### Violation of Section 517.301 of the Florida Statutes
### (Ecoflame, Preisler and Basok)

208.    Ms. Greenfeld re-alleges paragraphs 1 through 25, and 69 through 84 and incorporates them by reference as if fully set forth herein.

209.    Section 517.301(1)(a) of the Florida Statutes provides:  "It is unlawful and a violation of the provisions of this chapter for a person in connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security, including any security exempted under the provisions of s. 517.051 and including any security sold in a transaction exempted under the provisions of s. 517.061, directly or indirectly [2] to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or [3] to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a person."

210.    Defendants, Preisler and Basok, engaged regularly in sales of unregistered securities, including the sale of Ecoflame's securities to Ms. Greenfeld.

211.    Defendant Ecoflame, through its officers Preisler and Basok, by using means or instruments of transportation or communication in interstate commerce, made various false statements of material fact or omitted material facts necessary to make their statements not misleading in connection with solicitation and sale of Ecoflame's securities to Ms. Greenfeld.

212.    To solicit Ms. Greenfeld's investment in Ecoflame, in September 2020, Preisler represented to Ms. Greenfeld that he and Basok had just acquired Ecoflame and that they were working with other investors on a cutting-edge endeavor to combine Ecoflame, an energy company, with Tethys Solar Desalination—a water technology company.  Preisler represented to Ms. Greenfeld that the company resulting from the merger would be worth approximately $8 billion.

213.    In addition, in December 2020, Basok and Preisler provided Ms. Greenfeld with a fraudulent spreadsheet purporting to show the ownership interest of Basok and Amiad Lapidot in Ecoflame as of 2018, and that of Basok, Lapidot, and Preisler, as of 2019.

214.    At the time these representations were made, Defendants Ecoflame, Preisler, and Basok knew that these representations were false.  The representation concerning Preisler's acquisition of Ecoflame as well as the ownership spreadsheet are fraudulent because Ecoflame did not even exist until November 30, 2020.  More egregiously, Ecoflame had no assets, operations, or infrastructure to develop the alleged clean energy solution or justify the alleged valuation.

215.    In direct and justifiable reliance upon these misrepresentations and omissions of material fact by Preisler and Basok on behalf of Ecoflame, Ms. Greenfeld tendered $20,000 for the purchase of Ecoflame's securities.

216.   As a direct and proximate result of Defendants' fraudulent misrepresentations in violation of Section 517.301 of the Florida Statutes, Ms. Greenfeld has suffered substantial damages.

**SIXTEENTH CAUSE OF ACTION**
**Rescission of Contract**
**(Squidvision and Kannahaus)**

217.   Ms. Greenfeld re-alleges paragraphs 1 through 173 and incorporates them by reference as if fully set forth herein.

218.   Under Florida law, rescission is an appropriate equitable remedy where, as here, a contractual party has failed to perform a covenant or promise to do an act in the future where the act is such an indispensable part of what both parties intended, that the contract would not have been made absent such covenent.

219.   Both the Squidvision SPA and the Kannahaus SPA contain the following provision: "This agreement is valid subject to signing a shareholder agreement."

220.   Accordingly, in each instance, both Ms. Greenfeld and the Defendant company intended that the respective SPA would not be of legal force and effect until a shareholder agreement was signed.

221.   As of filing this lawsuit, neither Squidvision nor Kannahaus provided Ms. Greenfeld with a shareholder agreement to sign.

222.   Since neither Squidvision nor Kannahaus held a shareholder meeting since its formation to administer its business, any further demand by Ms. Greenfeld would be futile.

223.   In light of Squidvision's and Kannahaus' failure to perform the covenant to execute a shareholder agreement as the condition precedent to the validity of its respective SPA, Ms. Greenfeld seeks to rescind the Squidvision SPA and the Kannahaus SPA.

224.    In addition, Florida law makes rescission or restitution available to protect a party from the consequences of a contract whose subject matter is illegal.

225.    Because the subject matters of the Squidvision SPA and the Kannahaus SPA involve illegal, unregistered securities, Ms. Greenfeld seeks to rescind the Squidvision SPA and the Kannahaus SPA.

226.    Ms. Greenfeld has informed Squidvision and Kannahaus of her rescission of the SPA.

**SEVENTEENTH CAUSE OF ACTION**
**Money Had and Received**
**(Squidvision & Scentcast)**

227.    Ms. Greenfeld re-alleges paragraphs 1 through 130 and 174 through 216 and incorporates them by reference as if fully set forth herein.

228.    Under Florida law, an action for money had and received can be maintained where money has been obtained through fraud, imposition, extortion, or undue advantage.

229.    Squidvision obtained Ms. Greenfeld's investment of $92,480 through fraud and undue advantage by offering and selling unregistered Squidvision and Kannahaus securities to Ms. Greenfeld, withholding material information during the transaction from Ms. Greenfeld, and causing Preisler and Solovey to direct Ms. Greenfeld to wire her payments for purchasing illegal Squidvision and Kannahaus securities to Squidvision.

230.    Scentcast obtained Ms. Greenfeld's payment of $27,500 through fraud and undue advantage by offering and selling unregistered Squidvision and Ecoflame securities to Ms. Greenfeld, withholding material information during the transaction from Ms. Greenfeld, and by causing Preisler, Basok, and Solovey to direct Ms. Greenfeld to wire her payments for purchasing

illegal Squidvision and Ecoflame securities in the amount of $7,500 and $20,000, respectively, to Scentcast.

231.    Ms. Greenfeld has conferred certain benefits upon Squidvision and Scentcast, including the payments of $92,480 and $27,500, respectively.

232.    Squidvision and Scentcast retained the benefits conferred by Ms. Greenfeld.

233.    The circumstances are such that it would be inequitable for Squidvision and Scentcast to retain such benefits, given the illicit conduct and fraud committed by Squidvision, Scentcast, and their agents Preisler, Basok, and Solovey.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Greenfeld prays for the relief and judgment:

i.      awarding Ms. Greenfeld compensatory damages to be proven at trial for violations of the Securities Exchange Act of 1934, §10(b), 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, and § 517.301 of the Florida Statutes;

ii.     awarding rescission of consideration paid by Ms. Greenfeld, at least $120,000, for Defendants' violations of the Securities Act of 1933, §§ 5(a), 5(c), 12(a)(1), 15 U.S.C. §§ 77e(a), 77e(c), 77l(a)(1), §§ 517.07, 517.12, 517.211 of the Florida Statutes, and Florida common law;

iii.    awarding Ms. Greenfeld pre- and post-judgment interest;

iv.     awarding Ms. Greenfeld her reasonable attorneys' fees and costs incurred in relation to this lawsuit; and

v.      awarding Ms. Greenfeld other damages as the Court may deem just and proper under the circumstances, including punitive damages in an amount to be proven at trial.

## **JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs respectfully demand a trial by jury for all claims.

Dated: May 3, 2021

Respectfully submitted,

DIAZ, REUS & TARG, LLP
100 Southeast Second Street
3400 Miami Tower
Miami, Florida 33131
Telephone (305) 375-9220

By: */s/ Ahmand Johnson*
Michael Diaz, Jr., (Florida Bar No. 606774)
Attorney Email Address: mdiaz@diazreus.com
Ahmand Johnson (Florida Bar No. 38905)
Attorney E-mail Address: ajohnson@diazreus.com
Zhen Pan (Florida. Bar No. 123637)
Attorney Email Address: zpan@diazreus.com
*Counsel for Valerie Greenfeld*