UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CV-60944-RS

VALERIE GREENFELD,

    Plaintiff,

v.

SQUIDVISION CORP., KANNAHAUS CORP.,
ECOFLAME SOLUTIONS CORP.,
SCENTCAST LLC, BOBBY ORBACH,
AMIR PREISLER, HEZI BASOK, and
NOGA SOLOVEY,

    Defendants.
_____/

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

This matter is before the Court upon Defendants' Motion for Dismissal [DE 80] (the "Motion"), and Plaintiff's Opposition [DE 84]. For the reasons that follow, Defendants' Motion is granted in part and denied in part.

**I.    BACKGROUND**

This action arises out of a series of sales by Defendants to Plaintiff of certain securities in Defendant corporations. Pro-se Plaintiff, Valerie Greenfeld, an individual investor domiciled in Maryland, filed her Complaint [DE 1] in this action against four individual and four corporate Defendants. The Defendants in this action are: Squidvision Corporation, a Delaware corporation conducting business in Florida; Kannahaus Corporation, a Delaware corporation conducting business in Florida; Ecoflame Solutions Corporation, a Delaware corporation conducting business in Florida; Scentcast LLC, a Delaware corporation conducting business in Florida; Bobby Orbach of New York; Amir Preisler of Florida; Hezi Basok of the State of Israel; and Noga Solovey of

Florida.  (Compl. ¶¶ 8-15.)  At all relevant times, Preisler and Basok represented themselves to Plaintiff as co-founders and co-chairmen of Squidvision Corporation, Kannahaus Corporation, and Ecoflame Solutions Corporation, while Orbach and Solovey acted as agents of those companies. (*Id.* ¶¶ 12-15, 23.)

According to the Complaint, Plaintiff first met Orbach in or around March 2016.  (*Id.* ¶ 23.)  After cultivating a relationship with Plaintiff over several years, Orbach introduced Plaintiff to Preisler in October 2019 to discuss Squidvision Corporation — a company that claimed to develop security systems to better detect concealed weapons.  (*Id.* ¶¶ 25-26.)  Following that meeting, in late October 2019, Orbach coordinated a call between Plaintiff and Preisler and his associate Basok, regarding investment opportunities in Squidvision Corporation.  (*Id.* ¶ 27.)  During the call, Preisler represented to Plaintiff that Squidvision Corporation would be a safe and profitable investment; notwithstanding Preisler's pitch, Plaintiff declined to invest in the company at that time.  (*Id.* ¶ 28.)

The Complaint alleges that Plaintiff attended a meeting in November 2019 with Preisler and Basok regarding investment opportunities in Squidvision Corporation and Kannahaus Corporation.  (*Id.* ¶ 34.)  Preisler and Basok gave brief descriptions of each company during the meeting and offered shares of each to Plaintiff.  (*Id.* ¶ 38.)  Plaintiff alleges that Preisler and Basok made several false representations to induce her investment in the companies, including that the companies' principals had ties to the United States Department of Defense and an international aerospace and defense contractor, that the companies owned and operated 11,000 acres of land, that the companies were each valued in excess of $5 million, and that investment in the companies would be safe, secure, and profitable.  (*Id.* ¶ 39.)  According to the Complaint, these representations were false: the companies did not have ties to the United States Government or an aerospace and defense contractor, nor did the companies own any acres of land.  (*Id.* ¶ 40.)  At the time, neither

corporation had been legally formed and duly organized. (*Id.* ¶ 43.) During the meeting, Plaintiff alleges that she was not provided with any written material about the companies, such as financial statements, balance sheets, sales projections, or contracts that may have justified their purported valuation. (*Id.* ¶¶ 41-42.) Plaintiff also alleges that she was never provided with adequate disclosures of all material information related to the companies, such as a standardized form using "plain English" to describe the securities offering. (*Id.* ¶¶ 35-36.) Nevertheless, Plaintiff orally agreed at the meeting to tender $75,000 for a one-and-a-half percent ownership interest in Squidvision Corporation and $25,000 for a one-half percent ownership interest in Kannahaus Corporation. (*Id.* ¶ 44.)

The Complaint alleges that Preisler asked Plaintiff to make an initial payment of ten percent of her total investment soon after the November 2019 meeting. (*Id.* ¶ 47.) To that end, Preisler had Solovey draft a Stock Purchase Agreement ("SPA") for Plaintiff's investment in Squidvision Corporation. (*Id.*) Preisler and Plaintiff executed the SPA in December 2019. (Pl.'s Ex. A [DE 1-1].) The SPA reiterates the $5 million valuation of the company and generally memorializes the parties' agreement. (*Id.*) Included in the SPA is a provision whereby the buyer (Plaintiff) represents and warrants to the seller (Squidvision Corporation) that she is "financially capable of bearing the risk of loss of the entire investment represented by the Shares and is able to bear the economic risk of investment in the Shares for an indefinite period of time. The Buyer understands that this investment is a high risk investment in a Start-Up company." (*Id.* ¶ 9.) Following the execution of the SPA, Plaintiff was instructed by Preisler and Solovey to wire funds to Scentcast LLC; Plaintiff wired $7,500 to Scentcast LLC on December 9, 2019. (Compl. ¶¶ 49, 52.) Plaintiff subsequently wired the remaining balance of her investment ($92,480) to a bank account owned by Squidvision Corporation on January 10, 2020. (*Id.* ¶ 55.) Solovey sent Plaintiff another SPA to sign, this time on behalf of Kannahaus Corporation, evidencing Plaintiff's investment; Plaintiff

signed this SPA on March 4, 2020. (*Id.* ¶ 56.) This SPA contained similar language to the Squidvision Corporation SPA, including the provision regarding buyer's representations and warranties that the buyer is capable of bearing the risk of loss and that she understood that the investment was high-risk. (Pl.'s Ex. B [DE 1-2].)

According to the Complaint, Plaintiff began to grow impatient regarding the status of the companies and her investments over the next several months. (Compl. ¶¶ 61-62.) Plaintiff grew increasingly concerned over the dearth of information regarding the operations of the companies in which she had invested, even after repeated conversations with Orbach and Preisler. (*Id.* ¶¶ 64, 66.) As a result, Plaintiff contacted Defendants regarding recission of the two SPA contracts and her desire to return the parties to the status quo ante (i.e., the position they were in prior to executing the SPAs), to which she received no response. (*Id.* ¶ 67.)

The Complaint alleges that Preisler presented Plaintiff with an additional investment opportunity around the same time she began inquiring about recission of the SPAs. (*Id.* ¶ 69.) In or around September 2020, Preisler approached Plaintiff about an investment in a company he claimed to have acquired with Basok called Ecoflame Solutions Corporation. (*Id.*) Preisler told Plaintiff that the company, allegedly operating in the clean-energy industry, would be worth approximately $8 billion following a merger with another company. (*Id.*) Preisler and Basok solicited Plaintiff's investment in Ecoflame Solutions Corporation by providing her a slide-deck detailing the business model, expected purchases, management team, and technological underpinnings of the company. (*Id.* ¶ 71.) But, according to the Complaint, Preisler and Basok failed to provide Plaintiff with disclosures of all material information related to the company, such as a standardized form using "plain English" to describe the securities offering. (*Id.* ¶ 72.) Moreover, Preisler and Basok failed to provide information regarding Ecoflame Solutions Corporation's financial status, contracts, sales projections, return on investment, or anticipated

4

balance sheet that would support the alleged $8 billion valuation. (*Id.* ¶ 73.) Nevertheless, Plaintiff again agreed to invest, this time in the amount of $200,000 for a nine-percent ownership interest in Ecoflame Solutions Corporation. (*Id.* ¶ 75.) On December 11, 2020, Plaintiff tendered a $20,000 down payment to Scentcast LLC for her investment in Ecoflame Solutions LLC. (*Id.* ¶ 76.) On February 9, 2021, Basok acknowledged Ecoflame Solution Corporation's receipt of Plaintiff's $20,000 payment; however, Basok asserted that Plaintiff could not be considered an owner of the company or an interested party because she had not invested the entire amount she had originally agreed to. (*Id.* ¶ 81.) To date, Ecoflame Solutions Corporation has refused to refund Plaintiff's $20,000 investment. (*Id.* ¶ 82.)

Based on these allegations, Plaintiff's Complaint brings the following claims: (1) Unregistered Offer and Sale of Securities in Violation of the Securities Act of 1933 against Squidvision Corporation; (2) Controlled Person Liability in Violation of the Securities Act against Preisler, Basok, Solovey, and Orbach in relation to Squidvision Corporation; (3) Unregistered Offer and Sale of Securities in Violation of Florida law against Squidvision Corporation, Preisler, Basok, Solovey, and Orbach; (4) Violation of SEC Rule 10b-5 against Squidvision Corporation, Preisler, and Basok; (5) Violation of Section 517.301 of the Florida Statutes against Squidvision Corporation, Preisler, and Basok; (6) Unregistered Offer and Sale of Securities in Violation of the Securities Act against Kannahaus Corporation; (7) Controlled Person Liability in Violation of the Securities Act against Preisler, Basok, and Solovey in relation to Kannahaus Corporation; (8) Unregistered Offer and Sale of Securities in Violation of Florida law against Kannahaus Corporation, Preisler, Basok, and Solovey; (9) Violation of SEC Rule 10b-5 against Kannahaus Corporation, Preisler, and Basok; (10) Violation of Section 517.301 of the Florida Statutes against Kannahaus Corporation, Preisler, and Basok; (11) Unregistered Offer and Sale of Securities in Violation of the Securities Act against Ecoflame Solutions Corporation; (12) Controlled Person

5

Liability in Violation of the Securities Act against Preisler and Basok in relation to Ecoflame Solutions Corporation; (13) Unregistered Offer and Sale of Securities in Violation of Florida law against Ecoflame Solutions Corporation, Preisler, and Basok; (14) Violation of SEC Rule 10b-5 against Ecoflame Solutions Corporation, Preisler, and Basok; (15) Violation of Section 517.301 of the Florida Statutes against Ecoflame Solutions Corporation, Preisler, and Basok; (16) Recission of Contract against Squidvision Corporation and Kannahaus Corporation; and (17) Money Had and Received against Squidvision Corporation and Scentcast LLC.  This Court has subject matter jurisdiction over Plaintiff's claims pursuant to § 22 of the Securities Act, 15 U.S.C. § 77v, and 28 U.S.C. § 1331.  Venue is proper pursuant to 15 U.S.C. § 77v because one or more of the Defendants is found or transacts business in this district and because the solicitation and sale of securities took place in this district.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6) Standard

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where a plaintiff fails to state a claim upon which relief could be granted.  Fed. R. Civ. P. 12(b)(6).  To state a claim for relief, a plaintiff's allegations must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint may not rest on "naked assertion[s]" devoid of "further factual enhancement."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

When reviewing a motion under Rule 12(b)(6), courts must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). However, this tenet does not apply to legal conclusions, as courts are not bound to accept as true a legal conclusion couched as a factual allegation. *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Iqbal*, 556 U.S. at 678. Moreover, "courts may infer from the factual allegations in the complaint 'obvious alternative explanations' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *ADA v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (citing *Iqbal*, 556 U.S. at 682). A court considering a Rule 12(b)(6) motion is generally limited to the facts contained in the complaint and attached exhibits. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: (1) eliminate any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *ADA*, 605 F.3d at 1290 (quoting *Iqbal*, 556 U.S. at 679).

B.   **Rule 10b-5 Standard**

Claims brought under SEC Rule 10b-5 "must satisfy (1) the federal notice pleading requirements [set out in Federal Rule of Civil Procedure 8(a)]; (2) the special fraud pleading requirements found in Federal Rule of Civil Procedure 9(b) . . .; and (3) the additional pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ('PSLRA')." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal citations omitted).

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." This requirement can by met by pleading (1) precisely what

statements or omissions were made; (2) the time and place the statements were made and by whom; (3) the content of the statements and how they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997). Failure to satisfy the pleading requirements of Rule 9(b) is ground for dismissal of a claim based in fraud. *FindWhat*, 658 F.3d at 1298.

Under the PSLRA, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Additionally, if a claim requires proof "the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "Although factual allegations may be aggregated to infer scienter, scienter must be alleged with respect to each defendant and with respect to each alleged violation of the statute." *FindWhat*. 658 F.3d at 1296. If Plaintiffs fail to satisfy the PSLRA's pleading requirements, the Court "shall" dismiss the claim. *See* § 78u-4(b)(3)(A).

### III. DISCUSSION

Plaintiff's securities-law claims can be grouped into four categories: (1) federal claims under the Securities Act; (2) state claims under Florida securities law; (3) SEC Rule 10b-5 claims; and (4) claims under section 517.301 of the Florida Statutes. Plaintiff also brings claims for Recission of Contract (Count XVI) and Money Had and Received (Count XVII). Defendants move to dismiss each of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court will address these claims in turn.

### A. Federal Claims Under the Securities Act

Section 5 of the Securities Act of 1933 (the "Act") provides that, with certain exemptions, it is unlawful for any person to sell a security unless a registration statement is in effect for that security. 15 U.S.C. § 77e(a), (c) (prohibiting sale of unregistered securities). Section 12(a)(1) of the Act provides that an issuer of a security that violates Section 5 shall be liable to the person purchasing such security. 15 U.S.C. § 77l(a)(1). One exemption from the registration requirement is for "transactions by an issuer not involving any public offering," otherwise referred to as the "private offering exemption." 15 U.S.C. § 77d(2). The applicability of the private offering exemption "should turn on whether the particular class of persons affected need the protection of the Act." *SEC v. Ralston Purina Co.*, 346 U.S. 119, 125 (1953). The Eleventh Circuit has identified the following non-exhaustive list of factors to serve as guideposts in performing the private offering analysis: "[1] the number of offerees and their relationship to each other and the issuer (and the information available to the offerees due to that relationship); [2] the number of units offered; [3] the size of the offering, and [4] the manner of the offering." *APA Excelsior III L.P. v. Premiere Techs., Inc.*, No. 03-15552, 2004 WL 606440 (11th Cir. Sep. 23, 2004) (quoting *Doran v. Petroleum Mgmt. Corp.*, 545 F.2d 893, 900 (5th Cir. 1977)). If the private offering exemption applies, then issuers are exempt from the registration requirements under Section 5 of the Act. 15 U.S.C. § 77d(2).

Plaintiff's Complaint brings claims for the unregistered offer and sale of securities in violation of Sections 5 and 12(a)(1) of the Securities Act of 1933 against Squidvision Corporation (Count I), Kannahaus Corporation (Count VI), and Ecoflame Solutions Corporation (Count XI). Defendants argue that their securities were exempt from the registration requirements of Section 5 due to the private offering exemption and because Plaintiff qualifies as an accredited investor.

The Court finds that the private offering exemption applies to Defendants' transactions and that, consequently, Defendants were not required to provide Plaintiff with a registration statement in connection with the offer and sale of Defendants' securities. Plaintiff is a sophisticated investor who does not need the protections of the Act, as evidenced by an examination of the Eleventh Circuit's private offering analysis factors. Defendants' offerings were made to only a few offerees (including Plaintiff) who had close relationships with Defendants due to their long-standing business engagements. Indeed, Plaintiff first met Orbach in 2016, over three years before her decision to invest in one of Orbach's companies. Furthermore, the number of shares offered was minimal (less than two percent interest in two companies, and less than ten percent interest in Ecoflame Solutions Corporation), and the manner of the offering weighs heavily toward considering this a private offering (in contrast to a general solicitation through, for example, the use of public advertisements). Upon consideration of these factors, Defendants' offerings to Plaintiff appear to have been private offerings.

Additional criteria also weigh in favor of this being a private offering, including the fact that Plaintiff actively engaged with Defendants during the transaction period and was "excited about being a part of [the] team" (Defs.' Ex. M [DE 80]), that Plaintiff participates in international business conferences as a "Business Development Consultant for American and Israeli companies" (Defs.' Ex. O [DE 80]), that Plaintiff holds a Masters' Degree in International Transactions (Defs.' Ex. P [DE 80]), and that Plaintiff is the CEO of a company that instructs clients on "Israeli startup products" (Defs.' Ex. Q [DE 80]). Furthermore, Plaintiff executed two SPAs containing seller representation and warranty provisions outlining the high-risk nature of Plaintiff's investments. (Pl.'s Exs. A, B.) These factors in the aggregate suggest that Plaintiff is not a member of the "particular class of persons…need[ing] the protection of the Act." *Ralston Purina Co.*, 346 U.S. at 125. Defendants' offerings were therefore covered by the private offering exemption, and there

is no violation of Section 5 of the Act. Accordingly, Plaintiffs' Counts I, VI, and XI will be dismissed.

Plaintiff's Complaint brings three counts for controlled person liability for violations of §§ 5, 12(a), and 15 of the Act. The relevant portion of the Act explaining controlled person liability provides:

> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77l of this title, shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable.

15 U.S.C. § 77o. By its own force, this provision extends liability to persons who "control any person liable under sections 77k or 77l" of the Act. *Id.* The Court, in dismissing Plaintiff's claims under the Act in Counts I, VI, and XI, has not found that any Defendants are liable under Section 77k or 77l of the Act; therefore, controlled person liability likewise cannot attach to any Defendant. Accordingly, Count II, Count VII, and Count XII will be dismissed.

### B. State Claims Under Florida Securities Law

Plaintiff's Complaint brings claims for the unregistered offer and sale of securities in violation of sections 517.07, 517.12, and 517.211 of the Florida Statutes against Squidvision Corporation and its agents (Count III), Kannahaus Corporation and its agents (Count VIII), and Ecoflame Solutions Corporation and its agents (Count XIII). Defendants argue that these counts fail to state a claim for relief because the transactions at issue are exempted transactions under section 517.061 of the Florida Statutes and thus exempt from the requirements of sections 517.07, 517.12, and 517.211 of the Florida Statutes.

Section 517.07 of the Florida Statutes provides: "It is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security is exempt

11

under s. 517.051 [or] is sold in a transaction exempt under s. 517.061." Fla. Stat. § 517.07(1). Section 517.12 of the Florida Statutes requires an issuer or dealer of securities to register with the State prior to selling or offering to sell securities in Florida, unless an exemption applies. Fla. Stat. § 517.12(1). Section 517.211 of the Florida Statutes provides that every sale made in violation of section 517.07 or section 517.12 may be rescinded at the election of the purchaser. Fla. Stat. § 517.211.

Section 517.061 of the Florida Statutes, entitled "Exempt Transactions," provides several exemptions to the registration requirements under Florida securities law. Fla. Stat. § 517.061. For example, section 517.061(11) provides an exemption from the Florida registration requirements for limited, private offerings where certain conditions, like full and fair disclosure of all material information, are met. Fla. Stat. § 517.061(11)(a)(3).

Upon review, the Court finds that Plaintiff's claims under the Florida securities laws have been adequately pled to survive Defendants' Rule 12(b)(6) challenge. Plaintiff claims that Defendants sold her unregistered securities in contravention of section 517.07 and section 517.12 of the Florida Statutes. Defendants only stated grounds for dismissal of these claims is an exemption found in section 517.061(11) of the Florida Statutes for limited, private offerings. Defendants' reliance on this exemption is misplaced for two reasons: (1) because a condition of the exemption's applicability is the full and fair disclosure of all material information, which Plaintiff alleges Defendants did not provide; and (2) because the exemption places on issuers the burden of establishing that a statutory right to recission has been communicated to the purchaser. *See, e.g., Moecker v. Antoine*, 845 So. 2d 904, 908-09 (Fla. 1st DCA 2003) (barring applicability of a section 517.061(11)(a) exemption where issuer did not provide purchaser with a fixed event from which to calculate the time available for voiding purchases under the statute). Taking Plaintiff's allegations as true for purposes of the Rule 12(b)(6) challenge, the Court finds that

Plaintiff's claims pursuant to Florida securities law sufficiently state claims for relief, and that Defendants' Motion to dismiss these claims must be denied.

### C. SEC Rule 10b-5 Claims

To state a claim for relief under SEC Rule 10b-5, a plaintiff must sufficiently allege "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'" *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1236–37 (11th Cir. 2008).

Plaintiff claims that Squidvision Corporation (Count IV), Kannahaus Corporation (Count IX) and Ecoflame Solutions Corporation (Count XIV), along with Preisler and Basok, violated SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, by making various false statements of material fact in connection with the solicitations and sales of the companies' securities. Defendants argue that Plaintiff did not reasonably rely on any misstatements or omissions made by Defendants, but rather relied on her own business acumen in deciding to invest in the companies. Because Plaintiff has not adequately pled this element of the claim, Defendants argue, these counts should be dismissed.

Upon review, the Court finds that Plaintiff's claims under SEC Rule 10b-5 have been adequately pled to survive Defendants' Rule 12(b)(6) challenge. Plaintiff alleges in these claims that Defendants knowingly made material misrepresentations in connection with the sale of securities, such as their purported connection with the United States Department of Defense and an international aerospace and defense contractor, that the companies owned and operated 11,000 acres of land, and that the companies were each valued in excess of $5 million. As a result, Plaintiff alleges that she lost a total of $120,000 in direct and justifiable reliance upon these misrepresentations. These same allegations also state "with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b), and has specified "each statement alleged to

13

have been misleading, [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1). Plaintiff's SEC Rule 10b-5 claims are thus well-plead, and Defendants' Motion to Dismiss these Counts will be denied.

### D. Claims Under Section 517.301 of the Florida Statutes

Plaintiff's Complaint brings claims pursuant to section 517.301 of the Florida Statutes for fraudulent securities transactions against Squidvision Corporation (Count V), Kannahaus Corporation (Count X), and Ecoflame Solutions Corporation (Count XV), as well as Preisler and Basok. Defendants argue that these counts fail to state a claim for relief because the transactions at issue are exempted transactions under section 517.061 of the Florida Statutes, and thus section 517.301 of the Florida Statutes does not apply.

Section 517.301 is the Florida state analogue to SEC Rule 10b-5. It contains similar language to the SEC Rule, including the provision that states:

> It is unlawful and a violation of the provisions of this chapter for a person, in connection with the rendering of any investment advice or in connection with the offer, sale, or purchase of any investment or security, including any security exempted under the provisions of s. 517.051 and *including any security sold in a transaction exempted under the provisions of s. 517.061*, directly or indirectly, to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Fla. Stat. § 517.301(1)(a)(2) (emphasis added). Section 517.301, by its own force, expressly includes transactions exempted under Section 517.061. *Id.* Thus, Defendants' reliance on the applicability of a section 517.061 exemption to shield them from liability under section 517.301 is misplaced. Because this is the only basis advanced by Defendants to dismiss this set of claims, Defendants' Motion to dismiss Plaintiff's section 517.301 claims will be denied.

### E. Recission of Contract (Count XVI)

Plaintiff's Count XVI is a claim for recission of contract against Squidvision Corporation and Kannahaus Corporation. Under Florida law, a plaintiff must adequately plead six elements in order to state a cause of action for recission of a contract:

> 1) [t]he character or relationship of the parties; (2) [t]he making of the contract; (3) [t]he existence of fraud, mutual mistake, false representations, impossibility of performance, or other ground for rescission or cancellation; (4) [t]hat the party seeking rescission has rescinded the contract and notified the other party to the contract of such rescission; (5) [i]f the moving party has received benefits from the contract, he should further allege an offer to restore these benefits to the party furnishing them, if restoration is possible; [and] (6) [l]astly, that the moving party has no adequate remedy at law.

*Billian v. Mobil Corp.*, 710 So. 2d 984, 991 (Fla. 4th DCA 1998); *see also Barber v. America's Wholesale Lender*, 542 Fed. App'x 832, 836 (11th Cir. 2013).

Upon review, the Court finds that Plaintiff has sufficiently pled all of the required elements in order to state a claim for recission of contract against both Squidvision Corporation and Kannahaus Corporation. Plaintiff's Complaint contains allegations regarding: (1) the relationship of the parties; (2) the making of the contracts; (3) grounds for recission; (4) Plaintiff's communication to Defendants of her intent to rescind; (5) Plaintiff's intent to return to the status quo ante; and (6) Plaintiff's lack of an adequate remedy at law. Plaintiff has pled the nature of the relationship of the parties, including details of her introductory meetings with Orbach in 2016 and Preisler in 2019, and she has alleged that she entered into three SPAs with Defendants. With respect to the third element, Plaintiff alleges that Defendants' failure to perform a condition precedent necessary for the validity of the contracts or, alternatively, the illegal nature of the contracts (insofar as they purportedly sold illegal, unregistered securities under Florida securities law), as the grounds for recission of the contracts. Furthermore, Plaintiff has alleged that she communicated her intent to Defendants to rescind the contracts in late 2020 and return all parties

to the status quo ante, thereby sufficiently pleading elements four and five of her claim. In any event, in their Motion, Defendants have not challenged any specific element of Plaintiff's claim in Count XVI as deficient, but rather have rested on a blanket assertion that Plaintiff fails to state a claim. Based on these allegations, the Court finds that Plaintiff has sufficiently pled a cause of action for recission of contract, and the Court will deny Defendants' Motion to dismiss this claim.

Although one of the elements Plaintiff must plead to state her claim is that she has no adequate remedy at law, federal courts permit pleading in the alternative, including demands for relief in the alternative. Fed. R. Civ. P. 8(a)(3). Therefore, the Court will allow Plaintiff to maintain her claim for recission in the alternative, in the event that her Florida securities law claims fail to provide her the relief sought.

### F. Money Had and Received (Count XVII)

Plaintiff's final count is a claim for money had and received against Squidvision Corporation and Scentcast LLC. Florida recognizes the general rule that "an action for money had and received, currently treated as an action for restitution, can be maintained where money is paid under a mistake of fact or where money has been obtained through fraud, imposition, extortion, or undue advantage." *Berry v. Budget Rent a Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1370 (S.D. Fla. 2007) (quoting *Cent. Bank & Trust Co. v. Gen. Fin. Corp.*, 297 F.2d 126, 129 (5th Cir. 1961)).[1] This quasi-contractual action is maintained based on "the fiction of an implied promise to repay." *Marshall-Shaw v. Ford*, 775 So. 2d. 162, 164 (Fla. 4th DCA 2000). "The thought behind that cause of action is that, *in the absence of evidence of some express specific agreement*, the law will assume that one who receives and holds money that belongs to another has impliedly assumed the obligation of returning it and is, accordingly, in law indebted to the owner for it." *Berry*, 497 F.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

Supp. 2d at 1370 (quoting *Williams Mgmt. Enters. v. Buonauro*, 489 So. 2d. 160, 168 (Fla. 5th DCA 1986)) (emphasis in original). The mere fact that an overpayment has been demanded or payment made will not support an action for money had and received. *Hall v. Humana Hosp. Daytona Beach*, 686 So. 2d 653, 656 (Fla. 5th DCA 1996).

As described above, the presence of an express contract precludes recovery on a quasi-contractual remedy such as money had and received. *Berry*, 497 F. Supp. 2d at 1370. Here, Plaintiff entered into an express contract with Squidvision Corporation in the form of an SPA, whereby Plaintiff agreed to pay $75,000 for a one-and-a-half percent interest in the company. (Pl.'s Ex. A.) Because there is an express contractual agreement between Plaintiff and Squidvision Corporation, Plaintiff cannot recover against Squidvision Corporation based on a theory of money had and received. Therefore, the claim against Squidvision Corporation in Count XVII will be dismissed.

The analysis changes with respect to Scentcast LLC. In contrast to the relationship with Squidvision Corporation, Plaintiff does not have an express contractual agreement with Scentcast LLC. Plaintiff alleges that Scentcast LLC obtained $27,500 from her through fraud and undue advantage by offering and selling securities without providing full and complete material disclosures. On these facts, Plaintiff seeks the return of her payment from Scentcast LLC. Plaintiff may maintain her quasi-contractual action against Scentcast LLC "in the absence of some evidence of some express specific agreement" as between Plaintiff and Scentcast LLC, where Plaintiff's Complaint alleges that "money has been obtained through fraud." *Berry*, 497 F. Supp. 2d at 1370. Therefore, the claim against Scentcast LLC in Count XVII will survive Defendants' Motion pursuant to Rule 12(b)(6).

Accordingly, and for the reasons stated herein, it is hereby,

**ORDERED** that:

1. Defendants' Motion for Dismissal [DE 80] is **GRANTED in part and DENIED in part**.

    a. Defendants' Motion for Dismissal of Counts I, II, VI, VII, XI, and XII of Plaintiff's Complaint [DE 1] is **GRANTED**.

        i. Counts I, II, VI, VII, XI, and XII of Plaintiff's Complaint are **DISMISSED with prejudice**.

        ii. A claim for Money Had and Received against Squidvision Corporation in Count XVII is **DISMISSED with prejudice**.

    b. Defendants' Motion for Dismissal of Counts III, IV, V, VIII, IX, X, XIII, XIV, XV, XVI, and XVII of Plaintiff's Complaint is **DENIED**.

2. The Court will enter a Second Amended Trial Order setting forth new scheduling deadlines, including an updated summary judgment briefing schedule and trial date.

**DONE AND ORDERED** in Fort Lauderdale, Florida on this 31st day of March, 2023.

_____
RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc:   All Counsel of Record